**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **COURTHOUSE NEWS SERVICE,** | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **VELVA L. PRICE, in her official capacity** | ) | |
| **as Travis County District Clerk,** | ) | **Civil Action No. 1:20-cv-001260-LY** |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

# PLAINTIFF COURTHOUSE NEWS SERVICE'S
## <u>RESPONSE TO DEFENDANT'S MOTION TO DISMISS</u>

## <u>TABLE OF CONTENTS</u>

I.  <u>SUMMARY OF ARGUMENT</u> ...........................................................................1

II.  <u>RESPONSE TO DEFENDANT'S STATEMENT OF THE CASE</u>...................................2

III.  <u>THE *BROWN* DECISION IS INCONSISTENT WITH SETTLED ABSTENTION DOCTRINE</u> ...........................................................................................3

    A.  Abstention Unsupported by U.S. Supreme Court and Fifth Circuit Precedent..........................................................................................4

    B.  First Amendment Access Claims Not Subject to *Younger* and its Progeny ...........7

        1.  *Younger* Abstention Improper.................................................10

        2.  *O'Shea* and *Rizzo* Inapplicable .............................................13

    C.  *Brown* is Inconsistent with Numerous Federal Court Decisions Enjoining First Amendment Access Violations .................................................16

IV.  <u>CONCLUSION</u>..........................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ankenbrandt v. Richards*,
    504 U.S. 689 (1992)......................................................................................11

*Baggett v. Bullitt*,
    377 U.S. 360 (1964)........................................................................................8

*Bice v. Louisiana Pub. Def. Bd.*,
    677 F.3d 712 (5th Cir. 2012) .......................................................................10

*Biederman v. Brown*,
    563 S.W.3d 291 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ...........3

*Burford v. Sun Oil Co.*,
    319 U.S. 315 (1943).....................................................................................4, 5

*Colorado River Water Cons. Dist.v. United States*,
    424 U.S. 800 (1976).....................................................................................4, 6

*Connecticut Magazine v. Moraghan*,
    676 F. Supp. 38 (D. Conn. 1987).................................................................17

*Courthouse News Serv. v. Brown*,
    908 F.3d 1063 (7th Cir. 2018) ...........................1, 2, 3, 4, 5, 6, 10, 12, 13, 15, 16, 20

*Courthouse News Serv. v. Brown*,
    Case No. 17 C 7933, 2018 WL 318485 (N.D. Ill. Jan. 8, 2018)................13

*Courthouse News Serv. v. Brown*,
    Case No. 17 C 7933, 2018 WL 835220 (N.D. Ill. Feb. 13, 2018) ...........13

*Courthouse News Serv. v. Jackson*,
    C.A. No. H-09-1844, 2009 WL 2163609 (S.D. Tex. July 20, 2009).................8, 19

*Courthouse News Service v. Planet*,
    750 F.3d 776 (9th Cir. 2014) ...............................................................4, 14, 20

*Courthouse News Service v. Planet*,
    Case No. CV 11-08083, 2016 WL 4157210 (C.D. Cal. May 26, 2016), *aff'd in
    part, rev'd in part by* 947 F.3d 581 (9th Cir. 2020).........................2, 14, 18, 19, 20

*Courthouse News Service v. Schaefer*,
    429 F. Supp.3d 196 (E.D. Va. 2020) .........................................................16, 19

*Courthouse News Service v. Schaefer*,
  440 F. Supp.3d 532 (E.D. Va. 2020) ..........................................................................2, 18, 20

*Courthouse News Service v. Tingling*,
  No. 16 Civ. 8742 (ER), 2016 WL 8739010 (S.D.N.Y. Dec. 16, 2016) ..................2, 16, 19, 20

*Dombrowski v. Pfister*,
  380 U.S. 479 (1965)..........................................................................................................7

*EEOC v. Erection Co.*,
  900 F.2d 168 (9th Cir. 1990) ............................................................................................8

*Employers Res. Mgmt. Com. v. Tex. Dep't of Ins.*,
  A-06-CA-181 LY, 2006 WL 2521332 (W.D. Tex. Aug. 28, 2006) .......................................6

*Employers Res. Mgmt. Co. v. Tex. Dep't of Ins.*,
  A-06-CA-181 LY, 2006 WL 8434876 (W.D. Tex. Dec. 19, 2006).......................................6

*England v. La. State Bd. of Med. Exam'rs*,
  375 U.S. 411 (1964)..........................................................................................................7

*FOCUS v. Allegheny Cnty. Court of Common Pleas*,
  75 F.3d 834 (3rd Cir. 1996) .............................................................................................17

*Fort Wayne Journal- Gazette v. Baker*,
  788 F. Supp. 379 (N.D. Ind. 1992) ..................................................................................17

*G2, Inc. v. Midwest Gaming, Inc.*,
  485 F. Supp.2d 757 (W.D. Tex. 2007)...............................................................................5

*Gerstein v. Pugh*,
  420 U.S. 103 (1975).........................................................................................................11

*Grove Fresh Distribs. v. Everfresh Juice Co.*,
  24 F.3d 893 (7th Cir. 1994) ...............................................................................................8

*Habich v. City of Dearborn*,
  331 F.3d 524 (6th Cir. 2003) ...........................................................................................11

*Hartford Courant Co. v. Pellegrino*,
  380 F.3d 83 (2nd Cir. 2004)........................................................................................16, 17

*Independence News, Inc. v. City of Charlotte*,
  568 F.3d 148 (4th Cir. 2009) ...........................................................................................11

*Jamar v. Patterson*,
  868 S.W.2d 318 (Tex. 1993).............................................................................................3

*Lamar v. Ebert*,
  No. 2:12cv706, 2015 WL 13447657 (E.D. Va. Sept. 8, 2015), *vacated on
  other grounds*, 681 F. App'x 279 (4th Cir. 2017) ................................................................. 11

*Le v. Exeter Fin. Corp.*,
  No. 20-103777, 2021 WL 838266 (5th Cir. Mar. 5, 2021) ...................................................... 4

*Martin v. Stewart*,
  499 F.3d 360 (4th Cir. 2007) ................................................................................................. 11

*Miofsky v. Superior Court*,
  703 F.2d 332 (9th Cir. 1983) ................................................................................................... 8

*Moore v. State Farm Fire & Cas. Co.*,
  556 F.3d 264 (5th Cir. 2009) ................................................................................................... 5

*Moreno v. Henckel*,
  431 F.2d 1301 (5th Cir. 1970) ............................................................................................. 8, 9

*Moses H. Cone Mem 'l Hosp. v. Mercury Constr. Co.*,
  460 U.S. 1 (1983) .................................................................................................................... 7

*N.Y. Civil Liberties Union v. N.Y. City Transit Auth.*,
  652 F.3d 247 (2nd Cir. 2011) .................................................................................................. 8

*Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm., of State Bar of
  Tex.*,
  283 F.3d 650 (5th Cir. 2002) ................................................................................................... 5

*Nebraska Press Ass'n v. Stuart*,
  423 U.S. 1327 (1975) .............................................................................................................. 8

*Nebraska Press Ass'n v. Stuart*,
  427 U.S. 539 (1976) ................................................................................................................ 8

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
  491 U.S. 350 (1989) ............................................................................................................. 6, 7

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) .................................................................. 4, 13, 14, 15, 16, 19, 20

*Porter v. Jones*,
  319 F.3d 483 (9th Cir. 2003) ................................................................................................ 5, 8

*Press-Enterprise Co. v. Superior Ct.*,
  478 U.S. 1 (1986) .................................................................................................................. 18

*Railroad Commission v. Pullman Co.*,
   312 U.S. 496 (1941)................................................................................4, 5, 7

*Richmond Newspapers v. Virginia*,
   448 U.S. 555 (1980)...................................................................................7, 8

*Rivera-Puig v. Carda-Rosario*,
   983 F.2d 311 (1st Cir. 1992)....................................................................16, 17

*Rizzo v. Goode*,
   423 U.S. 362 (1976)..............................................................4, 13, 15, 16, 20

*Sable Commc'ns of Cal., Inc. v. Pacific Tel. & Tel. Co.*,
   890 F.2d 184 (9th Cir. 1989) .........................................................................5

*In re Search Warrant*,
   923 F.2d 324 (4th Cir. 1991) .......................................................................17

*Sierra Club, Inc. v. Sandy Creek Energy Assoc., L.P.*,
   627 F.3d 134 (5th Cir. 2010) .........................................................................7

*Sprint Communications, Inc. v. Jacobs*,
   571 U.S. 69 (2013).......................................................................6, 10, 12, 13, 20

*Steffel v. Thompson*,
   415 U.S. 452 (1974)......................................................................................7

*Tarter v. Hury*,
   646 F.2d 1010 (5th Cir. 1981) .....................................................................14

*Thomas v. Texas State Bd. of Medical Examiners*,
   807 F.2d 453 (5th Cir. 1987) .......................................................................11

*United States v. South Carolina*,
   720 F.3d 518 (4th Cir. 2013) .......................................................................11

*Vassiliades v. Israely*,
   714 F. Supp. 604 (D. Conn. 1989)................................................................8

*Younger v. Harris*,
   401 U.S. 37 (1971)..........................................4, 5, 6, 7, 10, 11, 12, 13, 14, 16, 17, 20

## Statutes

42 U.S.C. § 1983.....................................................................1, 3, 4, 8, 9, 10, 16

Texas Gov't Code, 51.303(a).........................................................................3

**Other Authorities**

First Amendment, U.S. Constitution.......................................1, 2, 3, 4, 5, 7, 8, 9, 10, 16, 17, 18, 20

Tex. R. Civ. P. 21(f)(3), (7), and (8) ..............................................................................................3

Tex. R. Civ. P. 21(f)(5) .................................................................................................................3

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **COURTHOUSE NEWS SERVICE,** | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **VELVA L. PRICE, in her official capacity** | ) | |
| **as Travis County District Clerk,** | ) | **Civil Action No. 1:20-cv-001260-LY** |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

**PLAINTIFF COURTHOUSE NEWS SERVICE'S
RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

COMES NOW Plaintiff Courthouse News Service ("Courthouse News"), by and through its undersigned attorneys, and files this *Response to Defendant's Motion to Dismiss* [Doc. 4], and in support thereof would show the Court as follows:

## I.   SUMMARY OF ARGUMENT

1.     The Motion to Dismiss ("Motion") filed by Defendant Velva L. Price, in her official capacity as Travis County District Clerk ("District Clerk" or "Defendant"), puts squarely at issue the availability of a federal forum, through 42 U.S.C. § 1983, to address systematic violations of the First Amendment right of access to public court records.

2.     The Court should deny the Motion for the following reasons:

•      Abstention is an extraordinary and narrow exception to the exercise of federal jurisdiction that, under U.S. Supreme Court and Fifth Circuit precedent, is inapplicable to the First Amendment claims asserted here;

•      Defendant's sole reliance on a single, non-controlling Seventh Circuit decision, *Courthouse News Serv. v. Brown*, 908 F.3d 1063 (7th Cir. 2018),

is misplaced because *Brown* is inconsistent with well-settled abstention precedent and numerous federal court decisions adjudicating similar claims on the merits, including decisions issued after *Brown* that reject its holding;

• There are no overriding issues of federalism or comity – the relief sought would not interfere with any pending state proceeding, executive action, or administrative scheme.

## II.   RESPONSE TO DEFENDANT'S STATEMENT OF THE CASE

3.      While Defendant's Statement of the Case accurately describes the gravamen of the claims asserted by Courthouse News, it denies that Defendant's self-imposed "no-access-before-process" policy and practice unnecessarily delays access to court records in violation of First Amendment rights. (Motion at pp. 1-3). Defendant attempts to justify the delays by claiming a legal duty to "review and approve" new case-initiating petitions "to protect the integrity of court records" before the filings can be seen. (*Id*. at p. 2). This process, however, is purely administrative in nature and imposes no impediment to providing constitutionally required access. Recent ***federal*** court decisions addressing similar "no-access-before-process" policies by state court clerks have rejected those policies as unconstitutional. *See, e.g.*, *Courthouse News Service v. Planet*, Case No. CV 11-08083, 2016 WL 4157210, at *11 (C.D. Cal. May 26, 2016) ("*Planet III*"), *aff'd in part, rev'd in part by* 947 F.3d 581 (9th Cir. 2020); *Courthouse News Service v. Schaefer*, 440 F. Supp.3d 532 (E.D. Va. 2020); *Courthouse News Service v. Tingling*, No. 16 Civ. 8742 (ER), 2016 WL 8739010 (S.D.N.Y. Dec. 16, 2016).

4.      The administrative tasks alleged to be necessary before access can be provided – *e.g*., reviewing for errors that could render files unsearchable, unreadable, or subject to technical manipulation – cannot be used to make an end-run around constitutional rights. (Motion at p. 2). The statutes, regulations, and policies cited by Defendant to justify a "no-access-before-process"

practice all involve identifying and correcting administrative defects that have no bearing on the so-called "integrity" of the filing. (Motion at pp. 2-3).[1] A new pleading is filed and becomes a public record at the moment of submission. *See* Tex. R. Civ. P. 21(f)(5) ("An electronically filed document is deemed filed when transmitted to the filing party's electronic filing service provider"); *see also Jamar v. Patterson* , 868 S.W.2d 318, 319 (Tex. 1993); *Biederman v. Brown*, 563 S.W.3d 291, 303 (Tex. App.—Houston [1st Dist.] 2018, no pet.). All Courthouse News seeks in this case is access at the time the new petition is deemed filed, the exact same access provided through PACER by the federal courts and similar on-receipt systems implemented by many state courts.

5.      Simply put, requiring timely, on-receipt access to new civil case filings would not "severely compromise" Defendant's ability to comply with state law or policy. Defendant could easily provide the requested level of access while new filings sit in a processing queue, waiting for the clerk to attend to administrative tasks, consistent with federal and other state court practice.

### III.    THE *BROWN* DECISION IS INCONSISTENT WITH SETTLED ABSTENTION DOCTRINE

6.      The Motion relies on a single, non-controlling decision of the Seventh Circuit in an attempt to deny Courthouse News a federal forum for its claims that Defendant is engaged in ongoing, systemic violations of the First Amendment right of access by state actors under 42 U.S.C. § 1983. (Motion at pp. 3-19, citing *Courthouse News Service v. Brown,* 908 F.3d 1063 (7th Cir. 2018)). As shown below, *Brown* is an outlier and conflicts with U.S.

---

[1] For example, Defendant cites Rule 4.8.4 of the Technology Standards, Texas Judicial Committee on Information Technology, which states that a clerk "may," but is not required to, ask an e-filer to redact "sensitive data." This is entirely discretionary because redaction obligations rests solely with the e-filer. Indeed, Rule 4.8.3 makes clear that a clerk "must" accept e-filings unless sealed or filed by a vexatious litigant. Defendant also cites Texas Gov't Code, 51.303(a), which merely states: "The clerk of a district court has custody of and shall carefully maintain and arrange the records relating to or lawfully deposited in the clerk's office." This provision is not relevant to public access requirements. Finally, Defendants cite Tex. R. Civ. P. 21(f)(3), (7), and (8), but these provisions only address e-filing through the e-filing manager system, with requirements for electronic signatures and formatting of documents. There is no state law that imposes any obligation upon the District Clerk to double-check e-filed documents or complete administrative processing of petitions before allowing public or press access.

Supreme Court and Fifth Circuit precedent, as well as numerous other federal court decisions that have rejected abstention as a basis to decline federal jurisdiction over Section 1983 and First Amendment claims.

7.      In essence, Defendant mounts an attack on the urgency of the First Amendment right of access itself, an "indispensable predicate to free expression about the workings of government." *Courthouse News Service v. Planet,* 750 F.3d 776, 785 (9ᵗʰ Cir. 2014). The Court should repel this attack on a constitutional bulwark. As the Fifth Circuit recently emphasized: "The Judicial Branch belongs to the American people. And our processes should facilitate public scrutiny rather than frustrate it. . . . [W]e urge litigants and our judicial colleagues to zealously guard the public's right of access to judicial records – ***their*** records – so 'that justice may not be done in a corner.'" *Le v. Exeter Fin. Corp.*, No. 20-103777, 2021 WL 838266, at *8 (5ᵗʰ Cir. Mar. 5, 2021) (emphasis in original) (citation omitted).

**A.      Abstention Unsupported by U.S. Supreme Court and Fifth Circuit Precedent**

8.      The *Brown* decision acknowledged four abstention doctrines under U.S. Supreme Court precedent: (1) *Pullman*;[2] (2) *Burford*;[3] (3) *Younger*;[4] and (4) *Colorado River*.[5] *Brown* also addressed refinements of the *Younger* doctrine found in *O'Shea*[6] and *Rizzo*.[7] Yet, the *Brown* court ultimately based its decision to abstain not on application of the limited contours of these doctrines, but on "more general principles of federalism" that are said to underlie *Younger* abstention, as refined by *O'Shea* and *Rizzo*. *Brown*, 908

---

[2] *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941).
[3] *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).
[4] *Younger v. Harris*, 401 U.S. 37 (1971).
[5] *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800 (1976).
[6] *O'Shea v. Littleton*, 414 U.S. 488 (1974).
[7] *Rizzo v. Goode*, 423 U.S. 362 (1976).

F.3d at 1071. In so doing, the *Brown* decision impermissibly broadened the scope of *Younger* abstention, in direct opposition to U.S. Supreme Court guidance.

9.       Before turning to *Younger* abstention that underlies *Brown*, it is clear that the other recognized abstention doctrines do not apply here (and, thus, were not relied upon in *Brown*). Under *Pullman* abstention, the following requirements must be met: (1) a federal constitutional challenge to state action, and (2) an unclear issue of state law that, if resolved, would make it unnecessary for the federal court to rule on the federal constitutional question. *Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm., of State Bar of Tex.*, 283 F.3d 650, 652–53 (5th Cir. 2002). Here, there is no "unclear issue of state law" that, if resolved, would avoid the First Amendment question presented. Indeed, "'constitutional challenges based on the first amendment right of free expression are the kind of cases that the federal courts are particularly well-suited to hear. That is why abstention is generally inappropriate when first amendment rights are at stake.'" *Porter v. Jones*, 319 F.3d 483, 492 (9th Cir. 2003) (quoting *J-R Distribs. v. Eikenberry*, 725 F.2d 482, 487 (9th Cir. 1984), *overruled on other grounds by Brockett v. Spokane Arcades, Inc*., 472 U.S. 491 (1985)). Indeed, *Pullman* abstention is "almost never . . . appropriate in first amendment cases." *Sable Commc'ns of Cal., Inc. v. Pacific Tel. & Tel. Co*., 890 F.2d 184, 191 (9th Cir. 1989) (citation omitted).

10.       *Burford* abstention, which permits abstention from hearing challenges to state administrative orders or complex regulatory schemes, is equally not applicable here. *Burford*, 319 U.S. at 331-32. *Burford* only applies when a case involves a "complex issue of unsettled state law that is better resolved through a state's regulatory scheme." *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 272 (5th Cir. 2009); *see, e.g., G2, Inc. v. Midwest Gaming, Inc.*, 485 F. Supp.2d 757, 766 (W.D. Tex. 2007) (abstaining from a case involving gaming policy

for which the Texas Lottery Commission has provided a unified state enforcement mechanism and administrative procedures for organizations to request advisory opinions regarding the legality of proposed gaming actions).

11.     Finally, *Colorado River* abstention, which permits dismissal or stay of federal action in deference to a pending parallel state court proceeding, only applies "in situations involving the contemporaneous exercise of concurrent jurisdictions . . . by state and federal courts." *Colorado River*, 424 U.S. at 817. "*Colorado River* abstention doctrine is used only in exceptional circumstances to avoid duplicative litigation in state and federal courts." *Employers Res. Mgmt. Com. v. Tex. Dep't of Ins.*, A-06-CA-181 LY, 2006 WL 2521332, at *4 (W.D. Tex. Aug. 28, 2006), report and recommendation approved sub nom. *Employers Res. Mgmt. Co. v. Tex. Dep't of Ins.*, A-06-CA-181 LY, 2006 WL 8434876 (W.D. Tex. Dec. 19, 2006).

12.     The decision in *Brown* relied solely on an overly broad reading of *Younger* and its progeny because the case "does not fit neatly into the *Younger* doctrine." *Brown*, 908 F.3d at 1072. This reliance is misplaced. Prior to *Brown*, the U.S. Supreme Court instructed lower courts that discretion to abstain must be cabined because the contours of abstention doctrine are "carefully defined." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359 (1989) ("*NOPSI*"). *Brown* ignored the "carefully defined" scope of *Younger* abstention, thus forcing a square peg into a round hole.

13.     More recently, in a strongly worded unanimous ruling in 2013, the U.S. Supreme Court reiterated that federal courts have a "virtually unflagging" obligation to hear cases within their jurisdiction, and should only abstain in narrowly defined, "exceptional" circumstances. *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 77-78 (2013) (citations omitted). The *Sprint* decision confirmed long-standing precedent that

abstention remains an extraordinary exception to the general rule that federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *NOPSI*, 491 U.S. at 358; *see also Sierra Club, Inc. v. Sandy Creek Energy Assoc., L.P.*, 627 F.3d 134, 144 (5th Cir. 2010).

14.     When a defendant urges abstention, a court's task is "not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications' that can suffice . . . to justify the **surrender** of that jurisdiction." *Moses H. Cone Mem 'I Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 25-26 (1983) (emphasis in original). Because federal courts remain the primary and preferred forum for deciding questions of federal law, the right of a plaintiff to litigate federal claims in federal court should not generally be denied. *Steffel v. Thompson*, 415 U.S. 452, 472 (1974) (*Younger* abstention); *see also England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411, 415-16 (1964) (*Pullman* abstention).

**B.     First Amendment Access Claims Not Subject to *Younger* and its Progeny**

15.     "[A]bstention . . . is inappropriate" in "free expression" cases. *Dombrowski v. Pfister*, 380 U.S. 479, 489-90 (1965). The claims in this case are directly aligned with free expression precedent, as made clear starting with *Richmond Newspapers v. Virginia*, 448 U.S. 555 (1980). There, the U.S. Supreme Court found a First Amendment right to criminal case information grounded in free expression: "[W]hether . . . describe[d] . . . as a 'right of access' … or a 'right to gather information,'" the right "to attend . . . hear, see, and communicate observations" is protected by First Amendment "freedoms . . . of speech and press." *Id.* at 575-76. A majority of justices adopted the view that "'[an] official . . . policy of concealing . . . knowledge from the public by arbitrarily cutting off the flow of information at its source abridges the freedom of speech and of

the press.'" *Id.* at 583 (Stevens, J., concurring) (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 38 (1978) (Stevens, J., dissenting)).

16.     Finding no support for the theory "that civil proceedings present considerations different than those in criminal" cases, *EEOC v. Erection Co.*, 900 F.2d 168, 169 (9th Cir. 1990) (applying common law), "all the other circuits that have considered the issue" after *Richmond Newspapers* extend the First Amendment access right to civil court records, *N.Y. Civil Liberties Union v. N.Y. City Transit Auth.*, 652 F.3d 247, 258 (2nd Cir. 2011), including complaints. *Vassiliades v. Israely*, 714 F. Supp. 604, 605-06 (D. Conn. 1989); *Courthouse News Serv. v. Jackson*, C.A. No. H-09-1844, 2009 WL 2163609, at *4-5 (S.D. Tex. July 20, 2009) (Harris County court officials conceded the point).

17.     Indeed, "the delay that is particularly pernicious in First Amendment cases," *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003), exists not only where the press is prohibited from reporting information, *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976), but also where it is prohibited from "immediate and contemporaneous" access to court records to obtain information to report. *Grove Fresh Distribs. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) (following *Stuart*). More broadly, "abstention [is] inappropriate . . . where delay would prejudice constitutional rights," *Baggett v. Bullitt*, 377 U.S. 360, 378 n.11 (1964), because "'[e]ach passing day may constitute a separate and cognizable infringement of the First Amendment.'" *Nebraska Press Ass'n v. Stuart*, 423 U.S. 1327, 1329 (1975).

18.     The obligation to exercise federal jurisdiction "is particularly weighty when those seeking a hearing in federal court are asserting . . . their right to relief under 42 U.S.C. § 1983." *Miofsky v. Superior Court*, 703 F.2d 332, 338 (9th Cir. 1983). In *Moreno v. Henckel*, the Fifth Circuit held that abstention was not warranted in a Section 1983 suit seeking declaratory and

injunctive relief arising from a deprivation of First and Fourteenth Amendment rights. There, Moreno, a Mexican-American, alleged that he was deprived of his rights to freedom of speech, petition, and association for protesting against discrimination. *Moreno v. Henckel*, 431 F.2d 1301 (5th Cir. 1970). The trial court abstained and dismissed his complaint on the basis that a remedy was available to Moreno in the Texas courts. *Id.* at 1301.

19.    On appeal, the Fifth Circuit summarily rejected the trial court's basis for abstention, stating unequivocally: "the fact that a state remedy is available is not a valid basis for federal court abstention." *Id.* The Court explained that requiring the federal court to await an attempt to vindicate the same claim in state court would defeat the purposes of Section 1983. *Id.* at 1306 (citing *McNeese v. Bd. of Ed. for Cmty. Unit Sch. Dist. 187, Cahokia, Ill.*, 373 U.S. 668, 672 (1963)). Accordingly, "civil rights cases are the least likely candidates for abstention." *Id.* at 1301. And, since there were no pending administrative or legal proceedings to disrupt, the Court concluded with a quote from Chief Judge Murrah of the Tenth Circuit:

> We yet like to believe that wherever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication, and that we have not the right to decline the exercise of that jurisdiction simply because the rights asserted may be adjudicated in some other forum.

*Id.* (quoting *Stapleton v. Mitchell, D.C.*, 60 F.Supp. 51, 55 (D. Kan. 1945), *app. dismd. per stip. Mitchell v. McElroy*, 326 U.S. 690 (1945)).

20.    The holding in *Moreno* is instructive and binding. Here, as in *Moreno*, the case turns on the constitutionality of state action predicated on deprivation of First Amendment rights. As such, the questions before the court must be adjudicated here because there is no construction of a state statute or regulation that would modify the federal constitutional question, and there are no pending proceedings in state court.

### 1.   *Younger Abstention Improper*

21.    Abstention directly premised on *Younger* – stretched beyond recognition by *Brown* based "on more general principles" – cannot properly be applied to the Section 1983 and First Amendment claims presented here.

22.    In its unanimous decision in *Sprint,* the U.S. Supreme Court reaffirmed its view that "[c]ircumstances fitting within the *Younger* doctrine . . . are 'exceptional,'" and include just three categories: (1) ongoing "state criminal prosecutions"; (2) certain "civil enforcement proceedings"; and (3) pending "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 73. *Sprint* made clear that *Younger* does not apply outside these categories, which "define *Younger*'s scope." *Id.* at 78; *see also id.* at 82 ("In short, to guide other federal courts, we today clarify and affirm that *Younger* extends to the three 'exceptional circumstances' identified in *NOPSI*, ***but no further***.") (emphasis added). *Brown* ignored this admonition and went much further than the *Younger* doctrine permits through a generalized, ad hoc application of federalism principles.

23.    Consistent with the approach in *Sprint*, and diametrically opposed to *Brown*, the Fifth Circuit has enforced the limitations of *Younger* and apply it only when three conditions are met: (1) the federal proceeding would interfere with an "ongoing state judicial proceeding"; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has "an adequate opportunity in the state proceedings to raise constitutional challenges." *Bice v. Louisiana Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012). As noted above, for *Younger* to apply, state proceedings must be ongoing and "judicial in nature." *Id*. This is because "[w]hen no state proceedings are pending, a federal action does not interfere with or insult state processes and the policies on which the *Younger* doctrine is premised have little force."

*Thomas v. Texas State Bd. of Medical Examiners*, 807 F.2d 453, 457 (5th Cir. 1987) (internal quotations omitted); *see also Gerstein v. Pugh*, 420 U.S. 103, 108 n.9 (1975) (*Younger* abstention is not appropriate when a federal action seeks to require state courts to hold preliminary hearings because such hearings would be ancillary to and not "prejudice the conduct of the trial on the merits."); s*ee also Habich v. City of Dearborn*, 331 F.3d 524, 530 (6th Cir. 2003) (declining *Younger* abstention when federal lawsuit raised different substantive issues than state action).

24.     Similarly, the Fourth Circuit has instructed that *Younger* abstention applies when the requested relief would interfere with "(1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding, that (2) implicates important, substantial or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit." *United States v. South Carolina,* 720 F.3d 518, 526-27 (4th Cir. 2013). The Fourth Circuit has further noted, contrary to *Brown*'s approach, that abstention is not "a license for free-form ad hoc balancing of . . .  state and federal interests." *See Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007).

25.     Thus, *Younger* abstention is only appropriate where there is a pending state court adjudicative proceeding with which the federal claim might interfere: "Absent any ***pending*** proceeding in state tribunals . . . *Younger* abstention [is] clearly erroneous." *Ankenbrandt v. Richards,* 504 U.S. 689, 705 (1992) (emphasis in original); *accord, e.g., Independence News, Inc. v. City of Charlotte,* 568 F.3d 148, 157 n.5 (4th Cir. 2009) ("Because there is no ongoing state judicial proceeding in which Appellants can raise their constitutional challenges, *Younger* abstention is inappropriate"); *Lamar v. Ebert,* No. 2:12cv706, 2015 WL 13447657, at *3 (E.D. Va. Sept. 8, 2015) (holding that "because

there is no ongoing state proceeding that would warrant abstention, the Court cannot grant summary judgment to Defendant based upon the *Younger* doctrine"), *vacated on other grounds,* 681 F. App'x 279 (4th Cir. 2017).

26.     This cornerstone of *Younger* abstention simply does not exist here. Defendant points to a handful of Texas statutes and policies, but the mere existence of these statutes and policies, even if construed favorably to Defendant, do not qualify as either "civil enforcement proceedings" or "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint,* 571 U.S. at 78. Nor does Courthouse News seek to "interfere" with any Texas civil proceeding. Indeed, the clerk in the *Brown* case relied on statutes, too, but *Brown* conceded – and in so doing admitted its departure from precedent – that the case before it was "not a traditional *Younger* scenario" because "there is no individual, ongoing state proceeding that plaintiffs seek to enjoin." *Brown,* 908 F.3d at 1072.

27.     The trial court in *Brown*, in a decision authored by Judge Matthew F. Kennelly, correctly applied abstention doctrine by recognizing the "strained attempt" to recast an access challenge as directed to alleged state-compelled administrative review tasks when there were no state proceedings that would be subject to interference:

> As an initial matter, Brown's contention that the *Younger* abstention doctrine applies to this case lacks merit. Notwithstanding Brown's strained attempt to characterize the case as a challenge to "an ongoing, standing" Cook County Circuit Court order that supposedly requires the Clerk to review and officially accept or reject e-filed complaints prior to making them accessible to the public, there are simply no ongoing state judicial proceedings with which [Courthouse News'] requested injunctive relief might interfere.

*Courthouse News Serv. v. Brown*, Case No. 17 C 7933, 2018 WL 318485, at *2 (N.D. Ill. Jan. 8, 2018).

---

28.     In a subsequent opinion, Judge Kennelly described Brown's no-access-before-process policy, using the same software used by Texas courts, in words directly applicable to the instant litigation:

> What is actually afoot is a system, effectively created by Brown herself, in which *all* e-filed complaints are treated as having been filed under seal until Brown herself clears them for public access. Brown cannot end-run the First Amendment by creating a system in which hypothetical doubt regarding whether litigants comply with rules about redaction allow her to exclude the public from access to judicial proceedings until she is good and ready to provide it.

*Courthouse News Serv. v. Brown*, Case No. 17 C 7933, 2018 WL 835220, at *3 (N.D. Ill. Feb. 13, 2018) (emphasis in original).

29.     The Seventh Circuit's decision in *Brown* was wrongly decided, stretching abstention doctrine well beyond *Younger*'s limited scope by relying on "the more general principles of federalism" and "[a]gainst the backdrop of *Younger, O'Shea* and *Rizzo*." *Brown,* 908 F.3d at 1071, 1073. The *Brown* decision was exactly the kind of "ad hoc judicial balancing" condemned by the U.S. Supreme Court in *NOPSI* and *Sprint*. An examination of the specific parameters of *Younger*'s limited expansion in *O'Shea* and *Rizzo* only confirms this conclusion.

**2.     *O'Shea and Rizzo Inapplicable***

30.     In *O'Shea,* a class of African-American plaintiffs claimed that the defendants denied them their civil rights by setting higher bonds, imposing harsher confinement conditions, and bringing mere ordinance violations to trial in a racially discriminatory and retaliatory manner, and sought to enjoin the magistrate and judge from engaging in such practices. *O'Shea*, 414 U.S. at 491-92. The U.S. Supreme Court reversed the Seventh Circuit, which had held that if plaintiffs' allegations were proven, the district

court should enjoin the officials and could require "periodic reports of various types of aggregate data on actions on bail and sentencing." *Id.* at 492-93 & n.1.

31.     Reversing, the *O'Shea* court found the relief sought was "aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials," and "would contemplate interruption of state proceedings to adjudicate assertions of noncompliance," resulting in "nothing less than an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that *Younger* . . . and related cases sought to prevent." *Id.* at 500. Thus, while *Younger* counsels against interfering with the adjudication of pending state court proceedings, *O'Shea's* focus was a concern about interference with the adjudication of future proceedings.

32.     O*'Shea* does not allow abstention where, as here, the required relief would not require continuous monitoring of the adjudication on the merits of future state court proceedings, let alone seriously disrupt those proceedings. As the Ninth Circuit explained in *Planet,* the dividing line is between cases "where the requested relief may be achieved without an ongoing intrusion into the state's administration of justice,"" in which case *O'Shea* abstention is inappropriate, and cases in which "the relief sought would require the federal court to monitor the substance of individual cases on an ongoing basis to administer its judgment," in which case *O'Shea* abstention "is appropriate." *Planet,* 750 F.3d at 790; *accord, e.g., Tarter v. Hury,* 646 F.2d 1010, 1013-14 (5th Cir. 1981) (describing dividing line is between cases that would require "case-by-case evaluations of discretionary decisions," in which *O'Shea* abstention is appropriate, and cases like this one that instead involve "nondiscretionary procedural safeguard[s]" against the violation of constitutional rights, in which *O'Shea* abstention is improper). In short, where a plaintiff seeks straightforward

injunctive relief that may issue (and where a defendant may comply) without additional ongoing judicial oversight, a federal court has no basis to abstain.

33.     *Rizzo* expanded on the principles articulated in *O'Shea* regarding the scope of the federal court's equity powers. *Rizzo,* 423 U.S. at 378. But, this case is far afield of *Rizzo.* Plaintiffs in *Rizzo* alleged a pattern of unconstitutional police mistreatment of minority citizens in Philadelphia. Following two trials, the district court entered an order requiring city officials to prepare, for the court's approval, a "comprehensive program for improving the handling of citizen complaints alleging police misconduct." *Id.* at 365. The proposed program, which was then incorporated into a final judgment, required, *inter alia,* an "all-encompassing 14-page" manual governing police misconduct complaints, a "'Citizen's Complaint Report' . . . drawn up in a format designated by the court," "a police recruit training manual reflective of the court's guidelines,'" and "annual summaries to provide a basis for the court's 'evaluation' of the program." *Id.* at 365 n.2.

34.     After granting review to consider whether the district court's judgment "represent[ed] an unwarranted intrusion by the federal judiciary into . . . state and local law," the U.S. Supreme Court concluded that it did. *Id.* at 366, 379-80. *Rizzo* held that the injunction was "beyond the scope of federal equity power," ***not*** that the district court should have abstained.

35.     In 2019, after *Brown*, Judge Henry Coke Morgan, Jr. of the U.S. District Court for the Eastern District of Virginia expressly disapproved of reliance on *O'Shea*, *Rizzo*, and *Brown* to require abstention where, as here:

> [t]he relief sought . . . would not invade any state court proceedings, ongoing or future. Moreover, it would not require continuous federal policing. Plaintiffs ask for an order requiring Defendants to release state court filings faster. While some future litigation may take place to enforce this Court's order, if it were to grant one, that does not rise to the level of a federal audit that would caution against exercising jurisdiction.

*Courthouse News Service v. Schaefer*, 429 F. Supp.3d 196, 207 (E.D. Va. 2020).

36.     Neither *O'Shea* nor *Rizzo* have any bearing here because Courthouse News seeks a straightforward injunction (similar to ones entered by several other federal courts), there is no pending state proceeding, and details of compliance are left to Defendant.

## C.     ***Brown* is Inconsistent with Numerous Federal Court Decisions Enjoining First Amendment Access Violations**

37.     As noted earlier, the decision in *Brown* is inconsistent with numerous federal court decisions that have rejected abstention in cases brought by the media to enjoin ongoing First Amendment access violations by state actors. *See, e.g.*, *Hartford Courant Co. v. Pellegrino,* 380 F.3d 83, 85-86, 101 (2nd Cir. 2004); *Rivera-Puig v. Carda-Rosario,* 983 F.2d 311, 319-20 (1st Cir. 1992); *see also Courthouse News Service v. Tingling,* Case No. 17 C 7933, 2016 WL 8739010, at 18- 19 (S.D.N.Y. Dec. 16, 2016) (preliminary injunction hearing transcript).

38.     Thus, it is not surprising that the generalized federalism and comity concerns underlying *Brown* have not deterred federal courts from considering First Amendment challenges to restrictions on access to state court records and proceedings. For example, in *Hartford Courant*, a case analogous to the instant action, several media companies brought a § 1983 action challenging the practice of the Connecticut state courts of sealing docket sheets of certain cases so that the public could not discover the existence of litigation. *Hartford Courant*, 380 F.3d at 85-86. In *Rivera-Puig*, a reporter challenged the constitutionality of a Puerto Rico court rule that closed all criminal preliminary hearings. *Rivera-Puig*, 983 F.2d at 322. Despite the presence of federalism and comity concerns, derived chiefly from the fact that in each case similar actions had been filed in the state/commonwealth courts (a factor ***not*** present here), both courts rejected *Younger* abstention, holding that federal court was an appropriate venue to challenge a statute,

administrative policy, or unauthorized actions of court administrators that infringed the First Amendment right of court access. *Hartford Courant*, 380 F.3d at 101; *Rivera-Puig*, 983 F.2d at 319-20.

39.     Indeed, federal courts routinely hear media challenges to orders restricting access, many involving ongoing state court litigation, over federalism and comity objections precisely because access issues are ancillary and peripheral to the state court proceedings in which they arise. As one federal court found in considering a challenge to a state court order barring the attorneys in the case from speaking to the media:

> [T]he Court cannot agree that the challenged gag order is so essential to the state court proceedings such that an injunction against the order would amount to an injunction of the criminal prosecution itself.
>
> Abstention under *Younger* is appropriate when a federal court acts to frustrate a pending state court proceeding, by injunction, declaratory judgment or similar mechanism, such that the proceedings are halted or mooted. . . . Any interference with the state proceedings would be minimal and therefore cannot justify the eschewal of the Court's jurisdiction to protect the federal constitutional rights of the plaintiff.

*Connecticut Magazine v. Moraghan*, 676 F. Supp. 38, 41 (D. Conn. 1987) (citations omitted); *see also FOCUS v. Allegheny Cnty. Court of Common Pleas,* 75 F.3d 834, 843 (3rd Cir. 1996) (rejecting *Younger* abstention in federal court challenge to state court gag order); *In re Search Warrant*, 923 F.2d 324, 328 (4th Cir. 1991) (rejecting *Younger* abstention in federal court action to unseal search warrant affidavit pertinent to state criminal proceeding); *Fort Wayne Journal-Gazette v. Baker*, 788 F. Supp. 379, 382-83 (N.D. Ind. 1992) (rejecting *Younger* abstention in federal court challenge to state court protective order).

40.     With respect to the specific access claims presented here, numerous federal courts have reached the merits of similar claims, issuing injunctions against state actors for constitutional violations. In *Planet III*, after nearly a decade of litigation, the Ninth Circuit addressed the Ventura

Superior Court clerk's policy and practice of withholding access to new civil complaints until after administrative processing – also described as a "no-access-before-process" policy. *See Planet III*, 947 F.3d at 589-97. Applying the "experience" and "logic" test of *Press-Enterprise Co. v. Superior Ct.*, 478 U.S. 1 (1986) ("*Press-Enterprise II*"), the Ninth Circuit held that the press has a qualified right of timely access to newly-filed civil complaints that attaches when the complaint is filed, *i.e.*, when the complaint is received by the court. *Id.* at 585, 588, 591. The same is true with respect to "petitions," the new case-initiating document in Texas, which corresponds to "complaints" in the federal courts and many state courts.

41.     The court in *Planet III* further determined that the clerk had failed to "demonstrate . . . that there is a 'substantial probability' that its [asserted] interest[s]" in withholding access to new civil complaints until after administrative processing "would be impaired by immediate access," and further to show that "no reasonable alternatives exist to 'adequately protect' that government interest." *Id*. at 596 (quoting *Press-Enterprise* II, 478 U.S. at 14). The Ventura Superior Court clerk's policy of withholding access to new civil complaints until after administrative processing thus failed both prongs of the *Press-Enterprise II* test and violated the First Amendment right of timely access to new civil complaints. *See id*. at 596-600.

42.     Shortly after the Ninth Circuit issued *Planet III*, the Eastern District of Virginia ruled, following a four-day bench trial, that under the First Amendment, the public and press generally have a "contemporaneous right of access" to newly-filed civil complaints, and that, in the context of a paper-filing court, "contemporaneous" means "on the same day as filing, insofar as practicable." *Courthouse News Service v. Schaefer*, 440 F. Supp.3d 532, 559 (E.D. Va. 2020).

43.     Judge Melinda Harmon, Southern District of Texas, previously rejected any policy or practice of the Harris County District Clerk resulting in 24-72 hour (1-3 day) access delays:

> While Defendants admit that Plaintiff has a right of access to newly-filed petitions, they maintain that the new method by which the Clerk's Office is processing case initiating documents is a reasonable time, place, or manner restriction and, as such, survives First Amendment scrutiny.
>
> . . . .
>
> The Court is unpersuaded by Defendants' argument and finds that the delay in access to the newly-filed petitions in this case is not a reasonable limitation on access. . . . Assuming, arguendo, that Defendants have an overriding interest, the Court finds that they have failed to demonstrate that the 24 to 72 hour delay in access is narrowly tailored to serve such an interest and that no less restrictive means of achieving that interest exists.

*See Courthouse News Serv. v. Jackson*, C.A. No. H-09-1844, 2009 WL 2163609, at *4-5 (S.D. Tex. July 20, 2009).[8]

44.     While the *Planet* litigation was underway, and in reliance in part on the *Jackson* case, the Southern District of New York in 2016 enjoined Manhattan state court Clerk Milton Tingling from withholding new e-filed petitions until they were processed, finding access should be "immediate and contemporaneous." *Courthouse News Service v. Tingling*, No. 16-cv-08742, 2016 WL 8739010, at *19 (S.D.N.Y. Dec. 16, 2016) (transcript of bench ruling). In so ruling, the *Tingling* court rejected the clerk's *O'Shea* abstention argument and concluded that "this Court finds that the remedy sought by [Courthouse News] poses little risk of an ongoing federal audit or a major continuing intrusion of the equitable power of the federal courts in the daily conduct of state proceedings." *Tingling* , 2016 WL 8739010, at 18. The Court enjoined the New York clerk "from denying access to newly [e-]filed civil complaints until after clerical processing" and required the clerk "to provide . . . access to those documents in a timely

---

[8] While Courthouse News is seeking to reform a 10-year-old agreed permanent injunction in *Jackson* based on a change in circumstances, this relief is common to a wide range of judgments against all manner of defendants and does not constitute ongoing federal oversight. Indeed, the mere existence of potential future litigation to enforce an order "does not rise to the level of a federal audit that would caution against exercising jurisdiction." *Schaeffer*, 429 F. Supp.3d at 207 (citing *Planet*, 750 F.3d at 792).

manner upon receipt." *Id.*; *see also Tingling,* 2016 WL 8739010 (Dec. 16, 2016 preliminary injunction hearing transcript). The administrative office of the New York courts then put in place a pre-processing review site available to the press and public for all e-filings statewide.

45.     These decisions make clear not only that Defendant's actions here are unconstitutional, but that a federal forum to address the challenge raises no legitimate issue of federalism or comity. No ongoing federal oversight is necessary, nor does Courthouse News seek it here. Unlike every case in which *O'Shea* has been applied, the relief sought by Courthouse News will not interfere with, interrupt, delay, disrupt, or affect the adjudication of the merits of any pending or future matter in Travis County, or in any Texas state court for that matter. To the contrary, the relief Courthouse News seeks is directed solely at the administrative policies of the District Clerk's office – namely, the policy of prohibiting access to new civil petitions until after they have been administratively processed, and the resulting denial of timely access.

## IV.    CONCLUSION

46.     This case presents "important First Amendment question[s]" that "should be adjudicated on the merits in federal court, where they belong." *Planet,* 750 F.3d at 779, 793. Defendant's exclusive reliance on *Brown* is misplaced – the decision is inconsistent with an extensive body of abstention precedent, including *Younger*, *O'Shea*, *Rizzo*, *NOPSI*, *Sprint*, *Planet,* and most recently *Schaefer*, the latter two rejecting virtually identical abstention arguments in the same context presented here – First Amendment access rights.

47.     The Court should deny the Motion.

Dated:  March 12, 2021

Respectfully submitted,

**JACKSON WALKER L.L.P.**


By:  */s/ John K. Edwards*
    John K. Edwards
    Attorney-In-Charge
    Texas Bar No. 24002040
    1401 McKinney, Suite 1900
    Houston, Texas 77010
    Telephone:  (713) 752-4200
    Facsimile:  (713) 752-4221
    Email:  jedwards@jw.com

OF COUNSEL:

Matt Dow
Texas Bar No. 06066500
100 Congress, Suite 1100
Austin, Texas 78701
Telephone:  (512) 236-2000
Facsimile:  (512) 236-2002
Email:  mdow@jw.com

Charles L. Babcock
Texas Bar No. 01479500
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone:  (713) 752-4200
Facsimile:  (713) 752-4226
Email:  cbabcock@jw.com

    ATTORNEYS FOR PLAINTIFF
    COURTHOUSE NEWS SERVICE

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel for Plaintiff Courthouse News Service certifies that on March 12,

2021, the foregoing *Plaintiff's Response to Defendant's Motion to Dismiss* was electronically filed

and served via the CM/ECF system on the following attorneys for Defendant:

    Anthony J. Nelson
    Patrick T. Pope
    Travis County Attorney's Office
    P.O. Box 1748
    Austin, Texas 78767

                                  By:  */s/ John K. Edwards*
                                        John K. Edwards
                                        Attorney-In-Charge