# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| **COURTHOUSE NEWS SERVICE,** §<br>    *Plaintiff* §<br> §<br> §<br>**v.** §<br> §<br> §<br>**VELVA L. PRICE, in her official** §<br>**capacity as Travis County** §<br>**District Clerk,** §<br>    *Defendant* § | Case No. 1:20-cv-1260-LY |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE LEE YEAKEL**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant Travis County District Clerk Velva Price's Motion to Dismiss Plaintiff's Original Complaint pursuant to FRCP 12(b)(1) and 12(b)(6), filed March 1, 2021 (Dkt. 4); Plaintiff Courthouse News Service's Response to Defendant's Motion to Dismiss, filed March 12, 2021 (Dkt. 5); Defendant Travis County District Clerk Velva Price's Reply to Plaintiff's Response to Motion to Dismiss Plaintiff's Original Complaint Pursuant to FRCP 12(b)(l) and 12(b)(6), filed March 19, 2021 (Dkt. 6); Defendant Travis County District Clerk Velva Price's Request to Take Judicial Notice of an unsworn declaration filed in a separate case (Reply, Dkt. 6 at 8 n.19); Plaintiff Courthouse News Service's Objection and Response to Request for Judicial Notice, filed March 23, 2021 (Dkt. 7); and Defendant Travis County District Clerk Velva Price's Reply to Plaintiff's Response and Objection to Request to Take Judicial Notice filed March 30, 2021 (Dkt. 8).[1]

---

[1] The District Court referred the motions to the undersigned Magistrate Judge for Report and Recommendation and disposition, respectively, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 9.

1

## I.  Background

Plaintiff Courthouse News Service ("CNS") brings this civil rights action under 42 U.S.C. § 1983 against Defendant Travis County District Clerk Velva Price (the "District Clerk") in her official capacity. CNS challenges the "policy and practice of withholding public and press access to new civil petitions electronically filed ('e-filed')" with the District Clerk until after administrative processing by District Clerk staff. Complaint (Dkt. 1) ¶ 2. CNS alleges that "[t]his policy and practice results in regular and pervasive delays in the ability of Courthouse News and others to see, read, and report on those petitions." *Id.*

CNS, a nationwide news service that covers state and federal courts, began covering the Travis County District Courts in 2003. *Id.* ¶¶ 8, 27. At the time, the District Clerk kept a bin behind the counter in which the intake clerk placed fresh petitions for review by reporters who covered the courthouse. *Id.* Thus, members of the press, including CNS reporters, could review new civil petitions by the end of the day on which they were filed. *Id.*

CNS alleges that this same-day access to new petitions policy changed in January 2014, when the State of Texas implemented mandatory e-filing for all civil petitions and the District Clerk implemented a policy and practice of withholding access to new e-filed petitions until after administrative processing by clerk staff. *Id.* ¶ 9. CNS complains that unlike most federal district courts and many state courts, the District Clerk does not make newly filed petitions available to the public once they are e-filed:

> Instead, the District Clerk withholds the petitions until after court staff
> have docketed them. As a direct result, there are regular delays of one
> to three days or more between the time when a new petition is e-filed
> and the time a journalist or any member of the public can see it, which
> turns the petition into old news.

*Id.* ¶ 46. CNS contends that this policy and practice has caused inordinate delays in access to newly filed petitions, including periods in which the District Clerk withheld access to 75% or more of

new e-filed civil petitions for at least one day, with a substantial proportion being withheld for two to three days. *Id.* ¶ 48.

CNS contends that the delays in access are "unnecessary and easily avoidable." *Id.* ¶ 10. CNS proposes that the District Clerk could adopt the policy and practice followed by the vast majority of federal courts and many state courts, which set up their e-filing portals to automatically release non-confidential civil petitions to the press or public when they are received, through PACER in the federal system or software systems in the state courts. *Id.* CNS argues that the District Clerk could use her office's current e-filing software to provide timely, preprocessing access to new civil petitions through a press review queue, as many other state and federal courts do. CNS further alleges that the District Clerk "has refused to do so, and delays in access to new petitions are now regular and pervasive due to the policy and practice of withholding access to new e-filed petitions until after administrative processing, which can take days." *Id.* ¶ 12.

CNS filed this suit on December 31, 2020, alleging that the District Clerk's denial of timely access to new civil court petitions deprives members of the press, including CNS and by extension its subscribers, of their right of access to public court records guaranteed by First Amendment to the United States Constitution, federal common law, and the free press provision of Article I, Section 8 of the Texas Constitution. CNS seeks a permanent injunction prohibiting the District Clerk from denying access to new civil petitions until they have undergone administrative processing and a declaration that the no-access-before-process policy is unconstitutional.

The District Clerk generally denies that her office's policies and practices have deprived CNS of its constitutional rights under the United States Constitution, federal common law, or the Texas Constitution. In her Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the District Clerk argues that the Court should abstain from exercising jurisdiction over

3

this case under the *Younger*[2] abstention doctrine and the general principles of federalism, comity, and equity. CNS opposes the Motion.

## II.    Request to Take Judicial Notice

As stated above, in her Reply brief, the District Clerk asks the Court to take judicial notice of an unsworn declaration from David Slayton, the administrative director of the Texas Office of Court Administration. Dkt. 6-1 (the "Slayton Declaration").[3] In the declaration, Slayton offers his opinions on the feasibility of implementing CNS's request "to provide on-receipt access to new civil complaints as soon as they are filed, before they are processed by the clerk." *Id.* ¶ 3. CNS argues that it would be improper to take judicial notice of the Slayton Declaration under Federal Rule of Evidence 201(b) because (1) the Slayton Declaration "is chock full of assertions of fact that are not only irrelevant to the abstention ground for dismissal of this action, but are hotly disputed by Courthouse News"; (2) nothing in the Slayton Declaration is "generally known" in this jurisdiction; and (3) "the Slayton Declaration is riddled with statements of alleged fact that cannot be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Dkt. 7 at 2-3.

Federal Rule of Evidence 201(b) provides that "the court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determine from sources whose accuracy cannot reasonably be questioned." Indisputability is a prerequisite for judicial notice of a fact under Rule 201(b). *See Taylor v. Charter Med. Corp.*, 162 F.3d 827, 831 (5th Cir. 1998) ("A fact that

---

[2] *Younger v. Harris*, 401 U.S. 37 (1971).

[3] The Slayton Declaration was submitted by the defendants in opposition to CNS's motion for relief from judgment in a separate case, *Courthouse News Serv. v. Jackson*, No. 4:09-cv-1844 (S.D. Tex. Nov. 10, 2020). Dkt. 6 at 8 n.19. The District Court for the Southern District of Texas denied CNS's motion on April 15, 2021. *Id.* at Dkt. 73.

4

has been judicially noticed is not subject to dispute by the opposing party—indeed, that is the very purpose of judicial notice.").

The Court finds that the Slayton Declaration does not meet the requirements for judicial notice. The declaration contains factual statements regarding the electronic filing processes and procedures in Texas state courts, their alleged relationship to the Texas Rules of Civil Procedure, and whether features such as a "press review queue" are feasible. Dkt. 6-1 ¶¶ 3-19. CNS disputes these factual assertions, making them inappropriate for judicial notice. In addition, the District Clerk's submission of the Slayton Declaration with her reply brief is procedurally improper because a reply should not contain new supporting materials. *See Spears v. United States*, No. 5:13-CV-47-DAE, 2014 WL 3513203, at *9 n.2 (W.D. Tex. July 14, 2014). Accordingly, CNS's objection to the Slayton Declaration is **SUSTAINED**, and the District Clerk's request that the Court take judicial notice of the Slayton Declaration is **DENIED**.

### III. Motion to Dismiss

#### A. Legal Standards

As stated, the District Clerk moves to dismiss this case both for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

1. Rule 12(b)(1)

Federal district courts are courts of limited jurisdiction and may exercise only such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," and over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332.

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

2. **Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide

6

> the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

**B. Analysis**

The District Clerk argues that the Court should abstain from exercising jurisdiction over this case under the *Younger* abstention doctrine and its underlying "general principles of federalism, comity and equity." Dkt. 4 at 3. She contends that the changes CNS seeks to provide immediate access to newly filed petitions would prevent her from complying with her duty to "protect the integrity of court records entrusted to her custody from defective, duplicative, and unlawful filings." *Id.* at 2. Specifically, the District Clerk relies on the following responsibilities under Texas law regarding the filing of documents:

(1) the duty to have custody of and "maintain and arrange the records relating to or lawfully deposited in the clerk's office," TEX. GOV'T CODE ANN. § 51.303 (West 1995);

(2) reviewing documents filed with the District Clerk to ensure they comply with the e-filing and requirements of the Texas Civil Rules of Civil Procedure, such as having a proper signature and formatting, not containing sensitive data, that the filing fee has been paid, etc., TEX. R. CIV. P. 21(f);

(3) accepting all documents tendered for e-filing except for sealed documents and those filed by a vexatious litigant, Texas Supreme Court Technology Standard 4.8.3 (Oct. 2019) (Dkt. 4-1 at 179);[4] and

(4) returning non-conforming documents to the filer for correction, Texas Supreme Court Technology Standard 4.8.4 (Oct. 2019) (Dkt. 4-1 at 179).

---

[4] *See also* TEX. R. CIV. P. 21(f)(11) ("The clerk may not refuse to file a document that fails to conform with this rule. But the clerk may identify the error to be corrected and state a deadline for the party to resubmit the document in a conforming format.").

The District Clerk does not explain how CNS's proposals for immediate access to newly filed petitions would interfere with her obligations under Texas law. Instead, she makes the conclusory allegation that: "The proposals offered in the Complaint to effectuate the changes sought by CNS would severely compromise, if not prevent District Clerk Price from complying with her aforementioned statutory obligation to protect the integrity of court records entrusted to her custody from defective, duplicative, and unlawful filings." Dkt. 4 at 3. Nonetheless, the undersigned finds that this case does not present extraordinary circumstances to justify abstention.

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 821 (1976). "Federal courts, it was early and famously said, have 'no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.'" *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Cohens v. Virginia*, 19 U.S. 264, 404 (1821)); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) ("We have often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.").

But a federal court's duty to exercise the jurisdiction given to this duty is not absolute. "Indeed, we have held that federal courts may decline to exercise their jurisdiction, in otherwise 'exceptional circumstances,' where denying a federal forum would clearly serve an important countervailing interest." *Quackenbush*, 517 U.S. at 716 (quoting *Colorado River*, 424 U.S. at 813).

> The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.

*Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-189 (1959). Abstention from the exercise of federal jurisdiction "is the exception, not the rule." *Colorado River*, 424 U.S. at 813. Thus, a federal court sitting in equity has discretion to dismiss a case on abstention grounds "only in extraordinary circumstances." *Quackenbush*, 517 U.S. at 726.

The Supreme Court has recognized the following abstention doctrines: (1) *Younger* abstention—cases involving pending state criminal proceedings,[5] certain types of state civil proceedings that are akin to criminal prosecutions,[6] or proceedings that implicate a state's interest in enforcing the orders and judgments of its courts;[7] (2) *Colorado River*[8] abstention—cases which are duplicative of a pending state proceeding; (3) *Pullman*[9] abstention—in which the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law; and (4) *Burford*[10] abstention. Under the latter doctrine, where timely and adequate state court review is available, a federal court must decline to interfere with the proceedings or orders of state administrative agencies (a) "when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," or (b) "where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv., Inc. (NOPSI) v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989). Here, the District Clerk relies on a broad

---

[5] *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975).

[6] *Id.*; *see also Moore v. Sims*, 442 U.S. 415 (1979); *Trainor v. Hernandez*, 431 U.S. 434 (1977).

[7] *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 13 (1987) (requirement to post bond pending appeal); *Juidice v. Vail*, 430 U.S. 327, 336 n.12 (1977) (civil contempt order).

[8] *Colorado River*, 424 U.S. at 813.

[9] *Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).

[10] *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

interpretation of the *Younger* abstention doctrine to argue that the Court should abstain from hearing this case and dismiss CNS's suit.

The Fifth Circuit Court of Appeals has explained that: "Federal courts do not abstain on *Younger* grounds because they lack jurisdiction; rather, *Younger* abstention reflects a court's prudential decision not to exercise [equity] jurisdiction which it in fact possesses." *Weekly v. Morrow*, 204 F.3d 613, 614-15 (5th Cir. 2000) (internal quotation marks omitted); *see also NOPSI*, 491 U.S. at 358 ("Before proceeding to the merits of the abstention issues, it bears emphasis that the Council does not dispute the District Court's *jurisdiction* to decide *NOPSI's* pre-emption claim. . . . Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds."). Accordingly, because abstention is not jurisdictional and Rule 12(b)(1) does not apply,[11] the Court analyzes the District Clerk's claims under Rule 12(b)(6).

### 1. The *Younger* Abstention Doctrine

As noted, the District Clerk relies on a broad interpretation of the *Younger* abstention doctrine to argue that the Court should abstain from exercising jurisdiction over this case. In *Younger v. Harris*, 401 U.S. 37 (1971), the plaintiff sought an injunction in federal court against enforcement of the California Criminal Syndicalism Act. At the time, the plaintiff was a criminal defendant in a pending state criminal prosecution under the Act. In those circumstances, the Supreme Court held that federal courts should not enjoin pending state criminal prosecutions absent bad faith, harassment, or a patently invalid state statute. *Id.* at 53-54. The Supreme Court explained that abstention was in order under "the basic doctrine of equity jurisprudence that courts of equity

---

[11] *But see Lively v. Tharp*, No. 5:20-CV-1311-OLG, 2021 WL 2930090, at *2 n.1 (W.D. Tex. June 29, 2021) (noting that some courts allow *Younger* abstention arguments to be raised through a Rule 12(b)(1) motion); 5B CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 1350 n.12 (3d ed. Apr. 2021 Update) (collecting cases in which courts have allowed abstention arguments raised under Rule 12(b)(1)).

should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Id.* at 43-44. The Court cautioned that "restraining equity jurisdiction within narrow limits is equally important under our Constitution, in order to prevent erosion of the role of the jury and avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted." *Id.* at 44. The Court further explained that this doctrine was reinforced by "the notion of 'comity,' that is, a proper respect for state functions." *Id.*

As stated above, the Court has extended the *Younger* abstention doctrine beyond state criminal prosecutions to state civil proceedings that are akin to criminal prosecutions, "and even to civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *NOPSI*, 491 U.S. at 368. The Supreme Court has repeatedly cautioned, however, that the circumstances fitting within the *Younger* doctrine are "exceptional," and that "federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not refuse to decide a case in deference to the States." *Jacobs*, 571 U.S. at 73 (cleaned up). The Court clarified that "*Younger* extends to the three 'exceptional circumstances' identified in *NOPSI*, but no further." *Id.* at 82; *see also Texas Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 508 (5th Cir. 2021) (stating that "*Younger* abstention is appropriate only 'in three types of proceedings'") (quoting *Jacobs*, 571 U.S. at 78).

Accordingly, *Younger* abstention is appropriate only in three "carefully defined"[12] types of cases: (1) ongoing state criminal prosecutions; (2) certain civil enforcement proceedings; and (3) pending civil proceedings "involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Jacobs*, 571 U.S. at 78. This case does not fit

---

[12] *NOPSI*, 491 U.S. at 359.

11

in any of these categories. Most important, there is no ongoing state judicial proceeding with which it would interfere. *See Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) ("Absent any *pending* proceeding in state tribunals, therefore, application by the lower courts of *Younger* abstention was clearly erroneous."). Accordingly, the District Clerk's reliance on *Younger* is unavailing.

### 2. The Seventh Circuit's *Brown* Decision

The District Clerk also argues that the Court should rely on the Seventh Circuit's holding in *CNS Service v. Brown*, 908 F.3d 1063 (7th Cir. 2018), *cert. denied*, 140 S. Ct. 384 (2019), to abstain from exercising jurisdiction. In *Brown*, CNS sued the Clerk of the Circuit Court of Cook County, Illinois, alleging claims nearly identical to those it asserts here. The district court granted CNS's motion for a preliminary injunction and rejected the clerk's abstention arguments, reasoning that *Younger* abstention did not apply because there was no ongoing state judicial proceeding with which CNS's requested injunctive relief might interfere. 908 F.3d at 1067-68. Relying on *Younger* and the Supreme Court's subsequent decisions in *O'Shea v. Littleton*, 414 U.S. 488674 (1974),[13] and *Rizzo v. Goode*, 423 U.S. 362 (1976),[14] and "on the more general

---

[13] In *O'Shea,* the plaintiffs sought injunctive relief against state judicial officers who allegedly intentionally discriminated in setting bonds and sentencing. 414 U.S. at 490-91. Relying on *Younger*, the Supreme Court explained that principles of comity and federalism "preclude[d] equitable intervention" because the plaintiffs sought "an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials." *Id.* at 499-500. The court reasoned that "recognition of the need for a proper balance in the concurrent operation of federal and state courts counsels restraint against the issuance of injunctions against state officers engaged in the administration of the State's criminal laws in the absence of a showing of irreparable injury which is 'both great and immediate.'" *Id.* at 499. The court further noted that the requested injunction "would contemplate interruption of state proceedings to adjudicate assertions of noncompliance by petitioners. This seems to us nothing less than an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that *Younger v. Harris, supra*, and related cases sought to prevent." *Id.* at 500.

[14] The *Rizzo* plaintiffs brought a civil rights lawsuit against a city, its mayor, and other city and police officials and asked for sweeping equitable relief, including appointment of a receiver to supervise the police department and civilian review of police activity. 423 U.S. at 365-66. The Supreme Court held, in relevant part, that "[i]mportant principles of federalism militate against the proposition, advanced by respondents, that federal equity power should fashion prophylactic procedures designed to minimize misconduct by a handful of state employees, and the District Court's injunctive order, which sharply limited the police department's 'latitude in the dispatch of its internal affairs,' contravened those principles." *Id.* at 363-64.

principles of federalism that underlie all of the abstention doctrines," the Seventh Circuit held that the district court erred by exercising jurisdiction and issuing a preliminary injunction. *Id.* at 1071, 1075. The court reasoned that the "initial adjudication of this dispute in federal court would run contrary to the considerations of equity, comity, and federalism." *Id.* at 1075. Thus, the Seventh Circuit found that "[t]his temporal access dispute with a state court clerk should be heard first in the state courts." *Id.*

### 3. The Fifth Circuit's Abstention Holdings

The undersigned declines to apply the Seventh Circuit's holding in *Brown*. First, this Court is bound only to follow Fifth Circuit and Supreme Court precedent, not opinions from other districts. *See United States v. Goodin*, 835 F. App'x 771, 782 (5th Cir. 2021) (noting that courts in the Fifth Circuit must follow Fifth Circuit and Supreme Court precedent). As discussed above, in 2013, after both its decisions in *O'Shea* and *Rizzo,* the Supreme Court clarified that *Younger* applies only to the three carefully defined categories of cases identified in *NOPSI*, "but no further." *Jacobs*, 571 U.S. at 82.

The Fifth Circuit also has clarified that federal courts should abstain from cases under the general doctrines of federalism and comity only where federal intervention "would interfere with pending judicial proceedings in the state courts." *Ciudadanos Unidos De San Juan v. Hidalgo Cnty. Grand Jury Comm'rs*, 622 F.2d 807, 830 n.49 (5th Cir. 1980). In *Ciudadanos*, the plaintiffs filed civil rights actions to obtain monetary, injunctive, and declaratory relief to redress the systematic exclusion of four classes of qualified individuals (Mexican-Americans, women, young people, and those having incomes below the poverty level) from Hidalgo County grand juries. The district court dismissed their complaints as inappropriate for resolution in the federal courts. The district court reasoned that any relief it might attempt to institute would intrude too greatly on the

13

state's management of its affairs, and that some form of abstention therefore might be appropriate. The Fifth Circuit reversed, finding that the cases "presented a justiciable controversy appropriate for resolution in the federal courts." *Id.* at 814. The Fifth Circuit further reasoned that "if discrimination is proven, it appears quite clearly that by ordering the jury commissioners to formulate a plan, the court can devise a remedy in keeping with its constitutional duties and limitations." *Id.* at 829. The court specifically rejected the county's argument that the district court should abstain from exercising its jurisdiction based on general notions of federalism and comity derived from cases such as *Younger*, *O'Shea*, and *Rizzo*. The Fifth Circuit explained that *Younger* and its progeny "held that federal intervention was inappropriate because there it would interfere with pending judicial proceedings in the state courts." *Id.* at 830 n.49. In the *Ciudadanos* cases, in contrast, "the relief is directed to a time prior to the initiation of any actual judicial proceedings; appellants' compliance with the district court's order can be fully accomplished and evaluated before any actual proceedings are commenced before even the grand jury's consideration of any indictments. These cases are thus outside the equitable restraint principle." *Id.*; *see also Thomas v. Texas State Bd. of Med. Examiners*, 807 F.2d 453, 454 (5th Cir. 1987) ("Because no state action was pending and exhaustion of state remedies is not required as a prerequisite to § 1983 cases, abstention under the principles of *Younger v. Harris*, as extended, was not appropriate.").

The Fifth Circuit has stated repeatedly that a district court's decision whether to abstain "must fit within the specific limits prescribed by the particular abstention doctrine invoked," and that a court "necessarily abuses its discretion when it abstains outside of the doctrine's strictures." *Webb v. B.C. Rogers Poultry, Inc.*, 174 F.3d 697, 701 (5th Cir. 1999); *accord Stratta v. Roe*, 961 F.3d 340, 356 (5th Cir. 2020); *Clark v. Fitzgibbons*, 105 F.3d 1049, 1051 (5th Cir. 1997). Accordingly, *Brown's* broad interpretation of *Younger* and its progeny conflict with Supreme Court and Fifth

14

Circuit precedent. Because none of the three exceptional circumstances are present in this case, abstention is inappropriate.

### 4. Application of Abstention by Other Courts

While the Fifth Circuit has not addressed the precise abstention issues raised in *Brown* and in this case, the majority of courts that have addressed similar facts have reached conclusions opposite to the Seventh Circuit. *See Courthouse News Serv. v. Glessner*, No. 1:21-CV-00040-NT, 2021 WL 3024286, at *7 (D. Me. July 16, 2021) (exercising jurisdiction over CNS's lawsuit and noting that CNS "has brought a number of similar challenges in courts across the country, and most, but not all, courts have declined to abstain, even when abstention was requested by the defendants"), *appeal filed*, No. 21-1624 (1st Cir. Aug. 16, 2021); *see also Courthouse News Serv. v. New Mexico Admin. Office of the Courts*, No. 21-cv-710, 2021 WL 4710644, at *37 (D.N.M. Oct. 8, 2021) (refusing to extend *Younger* to CNS's claims, stating that "an injunction requiring State courts to make civil complaints available more quickly to the press does not require abstention under *Younger*"), *appeal filed*, No. 21-2135 (10th Cir. Oct. 29, 2021); *Courthouse News Serv. v. Tingling*, No. 16-cv-8742, 2016 WL 8739010, at *19 (S.D.N.Y. Dec. 16, 2016) (finding that abstention was not required in suit against New York County Clerk's no-access-before-process policy because "the remedy sought by CNS poses little risk of an ongoing federal audit or a major continuing intrusion of the equitable power of the federal courts into the daily conduct of state proceedings"); *Courthouse News Serv. v. Jackson*, No. H-09-1844, 2009 WL 2163609, at *4 (S.D. Tex. July 20, 2009) (exercising jurisdiction and granting CNS injunctive relief).[15]

---

[15] *But see Courthouse News Serv. v. Gilmer*, No. 4:21-cv-286, 2021 WL 2438914, at *9 (E.D. Mo. June 15, 2021) ("This Court agrees with the Seventh Circuit's holding in *Brown* that CNS's claims regarding state court operations should be heard in state courts before this Court exercises its jurisdiction."), *appeal filed*, No. 21-2632 (8th Cir. Jul. 23, 2021).

For example, in *Courthouse News Service v. Schaffer*, 429 F. Supp. 3d 196, 206 (E.D. Va. 2019), the defendant, relying on *Brown*, argued that the district court should abstain from exercising its jurisdiction over the case because "states have a significant interest in running their own clerk's office filing procedures, and that when those procedures are challenged, the states should be given the first opportunity to assess the procedures." The court declined to abstain. First, the court found that the *Younger* abstention doctrine did not apply because "there is no ongoing state court proceeding," and "this case does not implicate matters 'uniquely in furtherance of the state courts' ability to perform its judicial function.'" *Id.* at 206. The court reasoned that:

> Here, the rate at which local clerks release filings is not as "uniquely in furtherance" of a court's judicial function. The Plaintiff's requested relief would not inhibit a court from resolving cases or enforcing its orders. Rather, Plaintiff's ask that they be given access to fillings more quickly. Such relief does not implicate a core judicial function. Because there is no state court proceeding in this case, and this matter is not within the three "exceptional" cases warranting *Younger* abstention, the *Younger* doctrine does not apply.

*Id.* at 207. Next, the court found that *O'Shea* and *Rizzo* did not require abstention because the relief sought would not invade any state court proceedings and would not require continuous federal policing. *Id.* The court reasoned that: "While some future litigation may take place to enforce the Court's order, if it were to grant one, that does not rise to the level of a federal audit that would caution against exercising jurisdiction." *Id.* Finally, the court found that the principles of equity, comity, and federalism relied on by the *Brown* court did not require abstention:

> Federalism does not require federal courts to yield matters of constitutional concern when a federal order would not excessively entangle a federal court in the states' own internal affairs. When Congress enacted 42 U.S.C. § 1983, it gave federal courts jurisdiction to issue relief against persons who, under color of state law, deprive another of a right secured by the federal Constitution. Plaintiff asks for a single injunction to remedy an alleged First Amendment violation. While the Court is not at this time prepared to comment on the merits of such a request in this case, the Court need not altogether abstain from addressing the merits of such a request.

*Id.* Subsequently, the district court ruled on the merits, finding that:

> Principles of federalism, efficiency, and comity weighed in favor of issuing a declaratory judgment in the case. State officials, although independently elected under their respective state constitutions, are not at liberty to deny rights guaranteed by the federal Constitution. When state officials do so, deny that it occurred, and deny that the federal Constitution even protects a right, a federal court may, under appropriate circumstances present here, declare the rights of the parties. Such a declaration, when drawn appropriately, does not adversely impact the federal-state balance of sovereignty.

*Courthouse News Serv. v. Schaefer*, 440 F. Supp. 3d 532, 562 (E.D. Va. 2020).

The Fourth Circuit found that the district court did not abuse its discretion in declining to abstain and affirmed. *Courthouse News Service v. Schaffer,* 2 F.4th 318 (4th Cir. 2021). The Fourth Circuit concluded that *Younger*, *O'Shea*, and *Rizzo* did not justify abstention, noting that the defendant had failed to point to "any ongoing state proceeding with which this case would interfere and we know of none." *Schaefer,* 2 F.4th at 324. The appeals court further determined that *Brown's* reliance on "general principles of federalism" instead of on a specific abstention doctrine was "inconsistent with our precedent and Supreme Court guidance." *Id.* at 325 n.2.

Similarly, in *Courthouse News Serv. v. Planet (Planet I)*, 750 F.3d 776 (9th Cir. 2014), the Ninth Circuit reversed the district court's decision to abstain under the equitable abstention doctrine enunciated in *Younger* and *O'Shea*. The Ninth Circuit reasoned that "*O'Shea* abstention is inappropriate where the requested relief may be achieved without an ongoing intrusion into the state's administration of justice, but is appropriate where the relief sought would require the federal court to monitor the substance of individual cases on an ongoing basis to administer its judgment." *Id.* at 790. The court found "that the requirements of the *O'Shea* doctrine" were not satisfied in the case, reasoning: "An injunction requiring the Ventura County Superior Court to provide same-day access to filed unlimited civil complaints poses little risk of an 'ongoing federal audit' or 'a major continuing intrusion of the equitable power of the federal courts into the daily conduct of state . . .

17

proceedings.'" *Id.* at 792 (quoting *O'Shea*, 414 U.S. at 500). The court further noted that CNS's lawsuit raised "novel and important First Amendment questions that the federal courts ought to decide." *Id.* at 793. Thus, the court reversed and remanded "so that the First Amendment issues presented by this case may be adjudicated on the merits in federal court, where they belong." *Id.*

Subsequently, in *Courthouse News Serv. v. Planet (Planet III)*, 947 F.3d 581, 600 (9th Cir. 2020), the Ninth Circuit addressed the merits of CNS's claims, holding that the county's former policy of no public access prior to processing by court clerk violated First Amendment, but that its policy of scanning new civil complaints and making scans available on public computer terminals complied with the First Amendment. The Ninth Circuit also stated that it disagreed with the Seventh Circuit's decision in *Brown* to abstain from exercising its jurisdiction over a similar case. *Id.* at 591 n.4.

The Court finds the reasoning in these cases to be more consonant with Supreme Court and Fifth Circuit precedent than the *Brown* decision. Accordingly, the Court declines to apply *Brown*.

**5. Abstention in First Amendment Cases**

Finally, the Supreme Court has emphasized that abstention is the exception and not the rule. *Colorado River*, 424 U.S. at 813. "It was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it." *Id.* at 813-14. Moreover, civil rights cases are "the least likely candidates for abstention." *Moreno v. Henckel*, 431 F.2d 1299, 1301 (5th Cir. 1970). "In such a case it is the duty of a federal court to exercise its jurisdiction." *Id.* (citation omitted). As the Fifth Circuit has reasoned:

> We simply do not think that *Younger* intended to proscribe completely the federal judicial role in the vindication of federal rights. To apply that decision outside its intended sphere–the well-established doctrine of comity restraints against federal interference with pending state criminal proceedings–would be in direct contradiction to the purposes of the Civil Rights Act as articulated by the Supreme Court . . . ."

18

*Hobbs v. Thompson*, 448 F.2d 456, 466-67 (5th Cir. 1971).

The Supreme Court has "been particularly reluctant to abstain in cases involving facial challenges based on the First Amendment." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 467 (1987); *see also Dombrowski v. Pfister*, 380 U.S. 479, 489-90 (1965) (holding that the abstention doctrine is inappropriate for cases where "statutes are justifiably attacked on their face as abridging free expression, or as applied for the purpose of discouraging protected activities"). In such a case, "to force the plaintiff who has commenced a federal action to suffer the delay of state-court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." *Zwickler v. Koota*, 389 U.S. 241, 252 (1967). As the Court has repeated:

> We yet like to believe that wherever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication, and that we have not the right to decline the exercise of that jurisdiction simply because the rights asserted may be adjudicated in some other forum.

*McNeese v. Bd. of Ed. for Cmty. Unit Sch. Dist. 187, Cahokia, Ill.*, 373 U.S. 668, 674 n.6 (1963) (quoting Judge Murrah in *Stapleton v. Mitchell*, 60 F. Supp. 51, 55 (D. Kan. 1945)).

**C. Conclusion**

Based on the foregoing, the undersigned concludes that abstention would be improper because "it is not appropriate to refer a litigant in a § 1983 civil rights suit to a State forum for adjudication of his Federal rights except in the most extraordinary circumstances." *Jennings v. Patterson*, 460 F.2d 1021, 1022 (5th Cir. 1972). This case does not present the extraordinary circumstances necessary for the Court to exercise its discretion to decline to exercise jurisdiction over this case. *Quackenbush*, 517 U.S. at 726. Therefore, the Magistrate Court recommends that the District Clerk's Motion to Dismiss should be denied.

## IV.     Recommendation

For these reasons, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **DENY** Defendant Travis County District Clerk Velva Price's Motion to Dismiss Plaintiff's Original Complaint pursuant to FRCP 12(b)(1) and 12(b)(6) (Dkt. 4).

It is **FURTHER ORDERED** that the Clerk remove this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Lee Yeakel.

## V.     Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on November 29, 2021.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE